May it please the Court, Lorne Colvin, on behalf of Peter Seltser. This case asks the question of whether a vocational expert's testimony that's inconsistent with the DOT, inconsistent with Social Security Ruling 8241, and inconsistent with a later published policy interpretation of the Operative Transferability of Skills Regulation can nonetheless constitute substantial evidence on which an ALJ could rely in finding that Peter Seltser could make the vocational adjustment with little or no vocational adjustment in terms of tools and work processes from being a claims examiner for the general public battling insurance companies to being the claims clerk in the insurance company filling out forms and transmitting the people to do the investigation. Can you explain the inconsistency between the vocational expert's testimony and the DOT definitions? Yes. The vocational expert suggested in one passage that she had looked at the work fields for the past work and for the target occupation, the claims clerk one occupation. It turns out that the work fields are, in fact, different. They're different in terms of what they do and where they do it. And so the failure to own the inconsistency in terms of the work fields by the vocational expert and the failure of the ALJ to ask about consistency, but the failure to own it is a clear violation, especially when we look at not only how the world of vocational experts address the concept of transferability of skills, and then we see that after this case was originally briefed on the opening brief, the commissioner issues a policy interpretation of the regulation that highlights exactly that the work fields are a critical component of the vocational transferability of skills analysis. And I know that this court has suggested that POMS is not a source of independent rights, but we're not suggesting that it's a source of independent rights. We're suggesting that it's a tool for interpreting the transferability of skills regulation. But I'm not sure I understood your answer to Judge Wynn's question. I apologize. The inconsistency. But I thought she was asking what were the inconsistencies in the VE's testimony comparing it to the DOT? And specifically, if I can clarify for you, the DOT's description of the job of being a claims clerk. Because normally, the DOT describes the job description in one manner, the VE testifies inconsistently. The ALJ's task is to really identify and ask about the inconsistency between the two, and then give the VE an opportunity to explain, and the ALJ then, in his or her ruling, reconciles that. So it wasn't clear to me from the briefing what in the DOT description of the claims adjuster job that's inconsistent with the way the expert testified. I don't think that the vocational expert mischaracterized the nature of the claims clerk job. What she did was mischaracterize the essential job functions of the claim clerk job in terms of attributing it to being a very little, if any, vocational adjustment from the occupation of the claims examiner type of work that Mr. Seltzer had performed in the past. The reason I ask that question is that one of the arguments you raise is that there's a conflict between the two, the testimony versus the DOT definition that the ALJ erred in failing to explore that conflict. And if I understand your answer correctly, it wasn't that there was a conflict, it's just the way the VE testified was inaccurate. The way, the conflict arises only when we take the commissioner at her word that we're supposed to look at work fields. And in the 28J letter, we reproduced the West version of the DOTs for these two occupations. And the work fields are different. The claims clerk has a work field of 231, which is verbal recording and record keeping as the essential job function. But Mr. Seltzer's occupation had a different work field, which is 271, investigating. So he's going to go from being an investigator to a record keeper. That's a significant difference in terms of his work duties. But didn't the VE just simply opine that, in her opinion, the adjustment from investigator to whatever you said it was would be, I forget exactly what her words were, essentially minimal? That is exactly what she said. So why can't the ALJ rely upon that testimony? The general consensus in the industry is to use work fields. The commissioner has adopted that in the POMS provision, construing the regulations and the three-part test of the regulations, specifically stating that skill is SVP and work processes is work fields and materials is MTSMS. When we adopt that, then the vocational expert needs to explain how an individual can go from working as an investigator and change occupations to a record keeper and that that constitutes little or no vocational adjustment. The vocational expert is under an obligation under MISACI to self-identify the conflict and to explain the conflict. And the vocational expert in this case was clearly aware of the use of work fields because she mentioned it. It's transcribed as worker fields in the record. But she clearly knew that work fields was the hinge on which this door swung and didn't own it and didn't explain it. She only gave her conclusion. And it isn't the conclusion. Well, in a situation like this where somebody has worked in the same industry for 30 plus years, isn't the specialized knowledge and the fact that the claims clerk is in the same Well, if Mr. Seltzer had worked for the insurance company as a claims adjuster, I think that would be true, but he didn't. He worked in private industry. He went to businesses and homes of people that had been involved in catastrophic loss of real property and represented those individuals against the insurance company. It isn't that he worked inside the insurance company's building and he's making an adjustment from the investigator to the clerk job. He's coming from outside and making an adjustment into the insurance company. So he has 30 years of experience, but I would be suggesting that someone who does plaintiff's PI could work as a claims clerk for the insurance company. I think that needs an explanation. And the conclusion is not an explanation. It's just a conclusion, and this court has consistently held that conclusory statements are not very weighty. They need an explanation. And they especially need an explanation in light of the fact that the commissioner has construed the regulation consistent with plaintiff's arguments. I'll reserve the last minute of my time. Okay. That's fine. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the court. Asim Modi on behalf of defendant appellee, Carolyn Colvin, acting commissioner of Social Security. In asking the court to set aside the ALJ's decision in this case, the appellant is asking the court to reject expert VE testimony and common sense and set aside an ALJ's finding that an individual who worked for over three decades in the insurance industry obtained skills that transferred to a claims clerk position within the same insurance industry. As the hearing transcript reflects, the ALJ, the VE, with the assistance of the appellant's attorney at the administrative proceedings, developed the record. They obtained knowledge about what the appellant did in his prior job. The VE then testified what skills the appellant obtained from his prior job. And then, with the help of the claimant's attorney, they went through each of the provisions set forth in regulations, which set forth that for an individual of appellant's vocational profile that the skills, he'd have to have very little of any adjustment in terms of work processes, work settings, industry, or tools. And then with the vocational expert, they testified category by category and established that in terms of work settings, there would be very little adjustment. In terms of work processes, again, very little adjustment. And the appellant mentioned that there was no explanation about how appellant could do his job when he worked as a public adjuster and then working as a claims clerk. The VE specifically addressed that question. The VE said that should appellant switch sides in sort of the insurance field, that working at four as a public adjuster and working as a claims clerk, there would be, I think the VE testified, there'd be less than very little adjustment in such a scenario. And given that the regulation should be read disjunctively, there's no requirement that when determining whether an individual has transferable skills, that they have to satisfy, there has to be very little of any adjustment in all four of those different sort of subsets. That once the VE testified and the ALJ relied on that testimony, that there was very little, if no adjustment, when it comes to work settings and work processes, then the analysis is over. Did the hearing officer expressly indicate the credibility of the VE? Well, in this case... Just so you know, you don't need to... Excuse me? On the record, did they expressly indicate the credibility of the VE, the hearing examiner? If you don't remember, that's fine. No, I'm sure. I follow. It's in terms of the qualifications of the vocational expert or just whether... Well, the content of the testimony. I credit the content of the testimony of the VE. Did the hearing examiner say that or not? The ALJ's decision reflects that they relied on the VE testimony. Did they expressly say that, that the VE is credible? Those words I don't believe were used in the hearing transcript. The hearing examiner did say, I accept the testimony of the VE. I don't know if on the transcript, you know, the ALJ would have said, I explicitly accept the VE's testimony. The ALJ's decision, though, reflects the ALJ's acceptance of the VE's testimony, because obviously... By incorporating the rephrasing of it or something. By accepting, yeah. Paraphrasing it. Exactly. By setting forth the VE's testimony when it comes to what skills the appellant obtained from his past work, how those skills transferred into the claims court position. What you're saying is if we review the basis of the findings that we will see in there, that the hearing examiner adopts, in substance and effect, item by item, what the VE testified to. Exactly. And under the agency's rulings, I think in particular 8241, an ALJ, to satisfy their obligations explaining the transferability analysis, the ALJ first has to identify what skills were transferable. The ALJ did so. And then the ALJ then has to identify to what position those skills are transferable to. The ALJ, again, satisfied that obligation under 8241. So to the extent that the ALJ had to elaborate on the transferability analysis in the decision, the ALJ did so in full compliance with the agency's own rulings. Essentially what the ALJ said was that it's about 30 days it'll take for this gentleman to develop the computer skills. Well, the issue with tools is, I believe, a red herring in this case for a number of reasons. As I mentioned earlier. It's a very simple question. And that is, did the VE say that essentially it's only going to take about 30 days for this gentleman to develop the computer skills to apply to his already acquired substantive knowledge? The VE testified that it would take 30 days or less for the appellant to learn the degree to which to use a computer for this job. That's a yes, right? Yes. Yes, Your Honor. Anything else? Well, if there are no further questions, then, well, actually, I want to touch on something that the appellant mentioned as well, which is relying, he was discussing at length the I think this issue, first of all, it's based on a selective interpretation of the POMS provision. And as the appellant acknowledged, both this court and the Supreme Court have repeatedly held that the POMS are not binding legal authority. They do not impose judicially enforceable duties on the ALJ and the court. But beyond that, this issue of work fields is not accurate because to the extent that is necessary when an ALJ does a transferability analysis, it sets out a number of different ways that the VE can determine whether a position is similar, a new position is similar to what the claimant did in his previous sort of work. And work fields is one of a non-exclusive list of options. Another option is, for example, is looking at the occupational group in the DOT. In this case, the occupational group for both the claims adjuster position, claims clerk position is exactly the same. The DOT, rather this POMS provision also mentions that an ALJ can look at the MPSMS code of the two positions. In this case, that code is exactly the same. And overall, all else, the ALJ can rely on a VE's testimony that's set forth in both the regulations and the agency's rulings. And in this case, the ALJ did so. And for that reason, substantial evidence supported the ALJ's decision that Mr. Seltzer was not disabled. And we respectfully request the court to affirm the ALJ's decision in this case. Okay. Thank you, counsel. Thank you. In order to have little or no vocational adjustment, the individual needs to be able to walk into the workplace and with a minimal amount of orientation, be highly proficient at the occupation. That's what Social Security Ruling 8241 says. And the vocational expert concedes that he's going to need a little bit less than 30 days to figure out how to use the computer. There's no evidence in the record that suggests that Mr. Seltzer even knows how to type. He told Mr. Blatchford, the vocational expert that UNUM hired, that he was trained by his grandfather to use a pad and a pen the old-fashioned way. Mr. Seltzer is going to have to walk in and, under 8241, need to demonstrate high proficiency after minimal orientation. And teaching him how to use the computer is not minimal orientation, even if it takes less than 30 days. Because every case where we have transferability, the person has to meet the requirements of that job. But meeting isn't little or no vocational adjustment. Little or no vocational adjustment is a high degree of proficiency with minimal orientation, and 30 days is not minimal orientation. Minimal orientation is show and do. I would submit on that unless the court had... Is there a case that says that? The ruling says that in this court. Show and do? Well, what is minimal orientation? There's no case that construes the phrase minimal orientation, and I would invite the commission, since the commissioner has chosen not to, to show and do. You're going to come to work, and we're going to show you what you do, and then you're going to do it. A high degree of proficiency. Right on the spot. On minimal orientation. Because you know everything about that job. It's minimal orientation. Okay. Anything else? Nothing further, Your Honor. Thank you very much. Case is submitted at this time. Thank you, counsel.
judges: Murphy, Paez, Nguyen